UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL BARBER,

        Plaintiff,

v.               6:15-CV-0338
                  (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

APPEARANCES:           OF COUNSEL:

OFFICE OF PETER ANTONOWICZ    PETER W. ANTONOWICZ, ESQ.
 Counsel for Plaintiff
148 W. Dominick St.
Rome, NY 13440

U.S. SOCIAL SECURITY ADMIN.     KAREN CALLAHAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

   This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. No. 15.) This case has proceeded in accordance with General Order 18.

   Currently before the Court, in this Social Security action filed by Daniel Barber ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 13, 14.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

I.  **RELEVANT BACKGROUND**

   A.  **Factual Background**

Plaintiff was born on December 24, 1993. (T. 133.) He completed the 8th grade. (T. 160.) Generally, Plaintiff's alleged disability consists of autism, attention deficit disorder ("ADD"), learning disability, and asthma. (T. 159.) His alleged disability onset date is December 24, 1993. (T. 65.)

   B.  **Procedural History**

On January 20, 2012, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. (T. 65.) Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On July 10, 2013, Plaintiff appeared before the ALJ, James G. Myles. (T. 28-64.) On August 12, 2013, ALJ Myles issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 10-27.) On January 26, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.  **The ALJ's Decision**

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 15-24.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 20, 2012. (T. 15.) Second, the ALJ found that

Plaintiff had the severe impairments of asthma, obesity, organic mental disorders and autism, and other pervasive developmental disorders. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 15-17.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with additional non-exertional impairments. (T. 17.)[1] The ALJ determined Plaintiff should have no concentrated exposure to pulmonary irritants and hazards; he was limited to routine, unskilled work and required only occasional interpersonal contact, with no team or work with the public as part of his critical job duties; and he must have no output or quota/piece work. (*Id.*) Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 23-24.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues the ALJ failed to find that Plaintiff's condition met the requirements of Listing 12.10. (Dkt. No. 13 at 12-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ improperly assessed Plaintiff's credibility. (*Id.* at 18-20.) Third, Plaintiff argues the ALJ "disregarded and violated" the Regulations when employing a consultative examiner. (*Id.* at 20-22.) Fourth, and lastly, Plaintiff argues the ALJ failed to afford controlling weight to Plaintiff's treating physician and failed to properly analyze the medical evidence. (*Id.* at 22-26.)

---

[1]  Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c).

### B. Defendant's Arguments

In response, Defendant makes five arguments. First, Defendant argues the record did not support a finding that Listing 12.10 was met or equaled. (Dkt. No. 14 at 7-9 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly assessed Plaintiff credibility. (*Id.* at 9-16.) Third, Defendant argues the ALJ properly developed the record in obtaining a consultative examiner. (*Id.* at 16-18.) Fourth, Defendant argues the ALJ appropriately evaluated and weighed the medical opinion evidence in the record. (Id. at 18-21.) Fifth, and lastly, Defendant argues the that vocational expert ("VE") testimony provided substantial evidence to support the ALJ's step five determination. (*Id.* at 21.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 416.920. The Supreme Court has recognized the validity of this sequential evaluation

process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Listing 12.10

At step three of the sequential process the ALJ must determine whether Plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.926) ("the Listings"). If Plaintiff's impairments or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement, Plaintiff is disabled. *Id.* at §§ 404.1509, 416.909. If Plaintiff does not meet or equal a Listing, the analysis proceeds to the next step.

To match an impairment listed in Appendix 1, Plaintiff's impairment "must meet all of the specified medical criteria" of a listing. *Sullivan v. Zebley,* 493 U.S. 521, 530,

6

110 S.Ct. 885, 107 L.Ed.2d 967 (1990) (citing 20 C.F.R. § 404 Subpt. P, App. 1). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Listing 12.10 encompasses autistic disorder and other pervasive developmental disorders. 20 C.F.R. § 404 Subpt. P, App. 1, § 12.10. The Listing is met when the criteria of both Paragraph A and Paragraph B are satisfied. For autistic disorders, Paragraph A requires all of the following: qualitative deficits in reciprocal social interaction; qualitative deficits in verbal and nonverbal communication and in imaginative activity; and markedly restricted repertoire of activities and interests. *Id.* at § 12.10A. Paragraph B criteria must also be met and requires two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* at § 12.10B.

The ALJ determined that Plaintiff did not meet the criteria of Listing 12.10. (T. 16.) The ALJ's analysis focused on the Paragraph B criteria of the Listing. (*Id.*) The ALJ determined that Plaintiff had mild restriction in activities of daily living, mild difficulties in social functioning, and moderate difficulties regarding concentration, persistence or pace. (*Id.*) The ALJ determined Plaintiff had no episodes of decompensation. (*Id.*)

Plaintiff first contends the ALJ erred in his step three evaluation because he did not specifically address the criteria outlined in Paragraph A. (Dkt. No. 13 at 13 [Pl.'s

7

Mem. of Law].) To be sure, the ALJ's determination did not discuss the Paragraph A criteria of Listing 12.10. (T. 16.) However, the criteria of Paragraph A *and* B must be established to satisfy the Listing. Therefore, any error to specifically address Paragraph A criteria would be harmless if the ALJ properly assessed the Paragraph B criteria and properly concluded Plaintiff did not meet that criteria.[2]

Further, Plaintiff argues the non-examining State agency medical examiner, M. Totin, Psychology, opined that Plaintiff met the Paragraph A criteria. (Dkt. No. 13 at 13 [Pl.'s Mem. of Law].) Dr. Totin indicated that Listings 12.02 and 12.10 were considered (T. 277); however, Dr. Totin opined Plaintiff's autism did not satisfy the Paragraph A or B criteria of Listing 12.10 (T. 286). Therefore, Plaintiff's argument fails.

In addition, at step three "absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." *Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982). Further, "[a]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." *LaRock ex. rel. M.K. v. Astrue,* No. 10–CV–1019, 2011 WL 1882292, *7 (N.D.N.Y. Apr. 29, 2011) (citing *Mongeur v. Heckler,* 722 F.2d 1033, 1040 (2d Cir.1983) (internal quotation marks omitted)).

To be sure, the ALJ could have been more precise in his step three analysis; however, the ALJ's step three analysis, and the analysis in the remaining steps,

---

[2] Of note, Paragraph A specially requires "qualitative deficits in verbal and nonverbal communication and in imaginative activity." The record indicated that Plaintiff did not show any difficulties with creativity and imagination and this area was an area of strength. (T. 243.)

8

provided sufficient reasoning and substantial evidence to support his step three determination. For example, in his step three analysis, the ALJ relied exclusively on Plaintiff's written testimony provided in his Function Report "Exhibit 4E" (T. 185-194) and did not discuss the medical evidence supplied by David Stang, Psy.D., that Plaintiff met the Listing (T. 318-321). (T. 16.) However, the ALJ did address Dr. Stang's opinion in his step four analysis, and reasoned that although Plaintiff appeared to have deficits in social functioning and concentration, they did not rise to the level opined by Dr. Stang. (T. 22.)

Overall, substantial evidence supported the ALJ's determination that Plaintiff did not meet a Listing. The ALJ specifically relied on Plaintiff's testimony in his step three analysis and based on Plaintiff's testimony he did not have any marked limitations in functioning as required by the Listing. Further, the ALJ's analysis at step four makes clear that the ALJ also relied on the medical opinions of the State agency consultative examiners and Plaintiff's provider Andy Lopez-Williams, M.D. in making his determination. For the reasons set forth in greater detail herein, the ALJ properly weighed the medical opinion evidence in the record. Therefore, the ALJ did not err in his step three determination because Plaintiff's impairment did not satisfy the Paragraph B criteria of Listing 12.10 based on Plaintiff's testimony and the medical evidence in the record which established that Plaintiff did not have marked limitations in functioning.

**B.      Credibility**

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982

F.2d 49, 56 (2d Cir.1992)).  However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms.  *See* 20 C.F.R. § 416.929; SSR 96–7p.  First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 416.929(a); SSR 96–7p. Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional

limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p.

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause his symptoms; however, his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (T. 18.) The ALJ stated elsewhere in his decision that Plaintiff was "somewhat credible," but was capable of performing some work. (T. 21.) In making his credibility determination, the ALJ relied on Plaintiff's testimony and the objective medical evidence in the record. (T. 18-23.)

Plaintiff argues the ALJ committed legal error in his credibility analysis because Plaintiff's allegations were consistent and the ALJ failed to follow SSR 96-7p which directs that "the reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision." (Dkt. No. 13 at 19-20 [Pl.'s Mem. of Law].)[3] Defendant counters that the ALJ properly assessed Plaintiff's credibility based on testimony and medical evidence. (Dkt. No. 14 at 9-16 [Def.'s Mem. of Law].) For the reasons stated herein, and further outlined in Defendant's brief, the ALJ's credibility determination was proper and conducted in accordance with the Regulations and SSR 96-7p.

Although Plaintiff's allegations regarding his symptoms may have been consistent, the ALJ must still evaluate those symptoms in accordance with the factors outlined in the Regulations. In making his credibility determination, the ALJ considered Plaintiff's activities of daily living. (T. 16, 18, 21); 20 C.F.R. § 416.929(c)(3)(i). The ALJ also discussed Plaintiff's symptoms and restrictions due to symptoms as reported by

---

[3] Of note, effective March 28, 2016 SSR 96-7p was superseded by SSR 16-3p.

medical sources. (T. 18-20); 20 C.F.R. § 416.929(c)(3)(ii), (vii). Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). Therefore, contrary to Plaintiff's assertions, the ALJ's credibility determination was made in accordance with the Regulations and it is recommended that the ALJ's credibility determination be upheld.

### C. Consultative Examiner

Plaintiff argues the ALJ committed legal error because he failed to follow the Regulations when he hired a consultative examiner from an outside source without first seeking the consultative exam from Plaintiff's treating provider. (Dkt. No. 13 at 20-22 [Pl.'s Mem. of Law].)

During the course of an application for Social Security Disability benefits the Commissioner may purchase a consultative examination. 20 C.F.R. § 404.1519a. The purchase of a consultative exam is done at the discretion of the Commissioner. *Id.* at § 404.1519a(a) ("If we cannot get the information we need from your medical sources, we *may* decide to purchase a consultative examination.") (emphasis added). Generally, an exam is ordered if information cannot be obtained from treating medical sources, to help the Commissioner resolve inconsistencies in the record, or to fill in any gaps in the record. *Id.* at § 404.1519a(b)(1)-(4). A consultative examination can only be performed by a "qualified medical source" who is licensed in the State and has "the training and

experience to perform the type of examination or test [the Commissioner] will request." *Id.* at 404.1519g.

The Regulation at 20 C.F.R. § 404.1519h states:

[w]hen in our judgment [plaintiff's] treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, [plaintiff's] treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, [plaintiff's] treating source is ordinarily the preferred source.

The Regulations state that a treating source will not be used in such cases where the treating source "prefers not to perform such examinations or does not have the equipment," there are conflicts or inconsistencies the treating source cannot resolve, plaintiff prefers to use a different source, or the treating source may not be a "productive source." 20 C.F.R. § 404.1519i. The Regulations also state that "[t]he medical sources who perform consultative examinations will have a good understanding of [the Social Security Administration's] disability programs and their evidentiary requirements." *Id.* at 404.1519n.

First, the ALJ has discretion to order a consultative examination to further develop the evidentiary record. *Cox v. Astrue*, 993 F. Supp. 2d 169, 177 (N.D.N.Y. 2012); *see Serianni v. Astrue,* No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010); 20 C.F.R. § 404.1519a.

Second, the ALJ has discretion in seeking a consultative examination from a plaintiff's treating source; "[w]hen *in our judgment* your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination." 20 C.F.R. § 404.1519a(a).

13

Therefore, an ALJ's failure to seek a consultative examination, or a consultative examiner from a treating source, does not constitute legal error because under the Regulations the ALJ is not obligated to order a consultative examiner, nor is he obligated to order a consultative examination from a treating source.

Here, ALJ did not abuse his discretion in not ordering a consultative examination from Plaintiff's treating provider. Of note, Plaintiff does not assert in his brief exactly who the ALJ should have contacted. To be sure, Plaintiff received treatment from a pediatrician, Lawrence Glantz; however, Dr. Glantz provided treatment for Plaintiff's everyday ailments, asthma and ADHD, but not his autism. Plaintiff received treatment from Dr. Lopez-Williams for autism; however, Dr. Lopez-Williams provided testing results and treatment notations and Plaintiff voluntarily ended treatment with Dr. Lopez-Williams. (T. 313.) Plaintiff underwent a consultative examination by Dr. Stang at his attorney's request; however, Dr. Stang was not a treating source because he conducted a one-time evaluation.

The ALJ acted within his discretion in ordering a consultative exam, the ALJ did not fail to adhere to the Regulations in requesting an examination from a source that was not a treating source; and further, any procedural error would be harmless. Plaintiff was represented by counsel and afforded the opportunity to provide all of his records from treating providers and Dr. Stang. Therefore, any error in seeking a consultative examiner from a treating provider would be harmless, because Plaintiff supplied a thorough medical record, complete with a functional capacity evaluation. *Fink v. Barnhart*, 123 F. App'x. 146, at 148 (6th Cir. 2005) (holding that the ALJ was not

obligated to order consultative examination conducted by plaintiff's treating source and further any error would be harmless because plaintiff's medical record was complete).

### D. Treating Source, Dr. Lopez-Williams

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2); *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff argues the ALJ erred in his treatment of medical evidence supplied by Dr. Lopez-William because the ALJ failed to assign the evidence specific weight. (Dkt. No. 13 at 22 [Pl.'s Mem. of Law].) Plaintiff further argues the ALJ erred in affording "great weight" to the opinions of the State agency medical consultants. (*Id.* at 24-25.) Lastly, Plaintiff argues the ALJ improperly assessed the opinion of Dr. Stang. (*Id.* at 25-26.)

15

First, an ALJ need not assign a specific weight to an opinion, so long as the court is able to discern the ALJ's reasoning. *See Curtis ex rel. B.C. v. Colvin*, No. 5:11-CV-1001, 2013 WL 3327957, at *5 (N.D.N.Y. July 2, 2013). Here, the ALJ afforded "some weight" to the opinion provided by Dr. Stang and "great weight" to the opinions provided by the State agency consultative examiners, Rehan Khan, Dennis Noia, M.D., and M. Totin, Psy.D. (T. 22-23.) The ALJ did not provide a specific weight to the opinion of Dr. Lopez-William; however, the ALJ thoroughly discussed his treatment observations and testing results. (T. 18, 21.) Plaintiff contends that failure to discuss the weight accorded to the report is reversible error; however, Plaintiff provides no support for his argument. The ALJ did not commit reversible error in failing to afford evidence supplied by Dr. Lopez-William's specific weight because the ALJ's decision accurately summarized the evidence in his determination and the ALJ's overall RFC determination was supported by substantial evidence in the record, included evidence supplied by Dr. Lopez-William.

It is well established that an ALJ may rely on the medical opinions provided by State agency consultants and that those opinion may constitute substantial evidence. *See* 20 C.F.R. §§ 416.912(b) (6), 416.913(c), 416.927(e); *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) ("[A]n ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability."). Therefore, affording a non-treating source more weight than a treating source does not require automatic remand.

The ALJ's RFC determination was supported by substantial evidence in the record. The ALJ's determination, that Plaintiff could perform routine, unskilled work,

with only occasional interpersonal contact, with no team or work with public, and no output or quota/piece work (T. 17), was supported by the opinions of Drs. Noia, Totin, also by the opinion of Drs. Lopez-Williams, and to a lesser extent, Dr. Stang.

Dr. Noia opined that based on his examination of Plaintiff, he was capable of understanding and following simple instructions and directions; and performing simple and some complex tasks with supervision and independently. (T. 275.) Dr. Noia opined Plaintiff would have some difficulty maintaining attention and concentration for tasks and would have difficulty at times in attending to a routine and maintaining a schedule. (*Id.*) He determined Plaintiff was capable of learning new tasks. (*Id.*) He opined Plaintiff was capable of making some appropriate decisions, relating to and interacting moderately well with others, and dealing with stress. (T. 276.)

On April 24, 2012, Dr. Totin reviewed Plaintiff's medical record. (T. 291-294.) Dr. Totin opined Plaintiff was not significantly limited in the area of understanding and memory. (T. 291.) He opined Plaintiff was not significantly limited in his ability to: perform short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and make simple work-related decisions. (*Id.*) Dr. Totin opined that Plaintiff had moderate limitations in his ability to sustain an ordinary routine without special supervision and in his ability to work in coordination with or proximity to others without being distracted by them. (*Id.*)

Therefore, the ALJ's determination that Plaintiff could perform routine, unskilled work was supported by Drs. Noia and Totin's opinions that Plaintiff was able to perform

17

this type of work. Further, the ALJ's determination that Plaintiff could perform unskilled work was supported by Dr. Lopez-William's opinion that Plaintiff's overall intellectual abilities were within the average range (T. 245), his ability to sustain attention, concentrate, and exert mental control was in the average range (T. 240-241, 245), and his abilities with verbal comprehension, perceptual reasoning, and working memory were in the average range (T. 245). Dr. Lopez-Williams stated that Plaintiff's "processing speed" was a weakness and that Plaintiff tended to act impulsively when the task was faster paced (T. 245), which was consistent with the ALJ's RFC limiting Plaintiff to no output or quota type work (T. 17).

The ALJ's determination that Plaintiff had social limitations was supported by the opinions of Drs. Noia and Totin, as well as Dr. Lopez-Williams. Dr. Noia observed that Plaintiff was cooperative and his manner of relating, social skills and overall presentation was "moderately" adequate. (T. 274.) Dr. Noia opined Plaintiff was capable of relating and interacting "moderately well" with others. (T. 277.) Dr. Totin opined Plaintiff was moderately limited in his ability to: interact appropriately with the general public and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 292.) He opined Plaintiff was not significantly limited in his ability to ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (*Id.*) Dr. Lopez-Williams opined Plaintiff had no difficulty in recognizing or understanding the perspectives, thoughts, or beliefs of others. (T. 241.) Dr. Lopez-Williams indicated Plaintiff showed deficits in his ability to understand the appropriate

use of language in social situations. (*Id.*) He opined that Plaintiff had "intense and restricted areas of interest" which could "impede his social functioning." (T. 246.) Therefore, the ALJ's RFC determination limiting Plaintiff to only occasional interpersonal contact, no team work or work with the public, was supported by the opinions of Drs. Noia, Totin, and Lopez-Williams.

The ALJ properly afforded the opinion of Dr. Stang "some weight." (T. 22.) The ALJ reasoned that Dr. Stang's opinion was "speculative and not based on the evidence presented in the record and at the hearing." (*Id.*) The ALJ further reasoned that Dr. Stang's opinion was questionable because it was conducted at the request of Plaintiff's attorney, it was based on a one time exam, and Plaintiff's mother was a crucial factor in formulating the opinion. (*Id.*) In his discussion of Dr. Stang's opinion, the ALJ provided specific examples of medical evidence in the record which did not support the opinion. For example, the ALJ stated that Dr. Stang's opinion that Plaintiff had deficits in social functioning and concentration were not supported by objective testing conducted by Dr. Lopez-Williams, Plaintiff's demeanor during the hearing and Plaintiff's testimony. (*Id.*) The ALJ's reasoning for the weight he afforded Dr. Stang's opinion was proper under the Regulations. 20 C.F.R. § 416.927(c)(1)-(4).

Overall, for the reasons stated herein, the ALJ properly weighed the medical opinion evidence in the record, the ALJ properly adhered to the Regulations in making his step four determination, and his RFC determination was supported by substantial evidence.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 22, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge